Magistrate Judge Brian A. Tsuchida

## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL JOHN SCOTT,<br><br>Defendant. | CASE NO. MJ20-041<br><br>COMPLAINT for VIOLATION<br><br>Title 21, U.S.C., Sections 841(a)(1) and (b)(1)(C), and Title 18, U.S.C., Sections 922(g)(1), 924(a)(2), and 2 |

BEFORE BRIAN A. TSUCHIDA, United States Magistrate Judge, United States Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1
**Possession of Controlled Substances With Intent to Distribute**

On or about January 30, 2020, at Whatcom County, within the Western District of Washington, MICHAEL JOHN SCOTT did knowingly possess, with the intent to distribute, and aid and abet the possession of with the intent to distribute, substances

COMPLAINT / United States v. Michael John Scott - 1
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

controlled under Title 21, United States Code, Section 812, Schedules I and II, to wit, heroin and N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl).

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT 2
### Felon in Possession of a Firearm

On or about January 30, 2020, at Snohomish County, within the Western District of Washington, MICHAEL JOHN SCOTT, knowing that he had been convicted of the following crime punishable by a term of imprisonment exceeding one year, to wit, *Conspiracy to Distribute Controlled Substances*, on January 24, 2020, in the United States District Court for the Western District of Washington, Case No. CR18-5579RBL, did knowingly possess, in and affecting interstate and foreign commerce, a firearm, to wit: a Colt Delta Elite 10mm semi-automatic pistol, bearing serial number DS42017, which had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

And the complainant states that this Complaint is based on the following information:

I, Ryan C. Smith, being first duly sworn on oath, depose and say:

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am a Special Agent with the Drug Enforcement Administration ("DEA"), assigned to the Bellingham, Washington Resident Office. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, *et seq.*). I have been employed as a Special Agent with the DEA since March 2017. Prior to becoming a Special Agent, I was a detective in the Special Victims Unit, a police motorcycle officer, and a police patrol officer with the Hoover Police Department in Hoover, Alabama. In my experience as a law enforcement officer, I have participated in numerous narcotics

COMPLAINT / United States v. Michael John Scott - 2
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 investigations, during the course of which I have participated in physical surveillance and executions of search warrants.

2. I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking. I have participated in narcotics investigations at both the local and federal level, and I have participated in the execution of federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of violations related to cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, heroin, fentanyl, marijuana and other dangerous drugs.

3. I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have discussed and learned from other law enforcement investigators in regards to these matters as well.

4. Based on my training, experience, and conversations with other experienced narcotics investigators, I have gained insight into the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication telephones to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of said activity. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. My specialized training and experience in drug investigations form a basis for my opinions and conclusions, which I drew from the facts set forth herein.

5. I make this affidavit with the belief that there is probable cause to believe MICHAEL JOHN SCOTT has committed the crimes of *Possession of Controlled Substances With Intent to Distribute*, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)

COMPLAINT / United States v. Michael John Scott - 3
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and 18 U.S.C. § 2, and *Felon in Possession of a Firearm*, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). This affidavit does not set forth every fact known to me concerning MICHAEL JOHN SCOTT, but only those I believe are necessary for a fair determination of probable cause.

6. I make this Affidavit based upon personal knowledge derived from my participation in this investigation and upon information I believe to be reliable from the following sources:

   a. My training and experience investigating drug trafficking and related criminal activity, as described above;

   b. Oral and written reports and documents about this and other investigations that I have received from agents of the DEA and the Whatcom County Sherriff's Office (WCSO), and other federal, state and local law enforcement agencies;

   c. Physical surveillance conducted by the aforementioned agencies, and other law enforcement agencies, that has been reported to me directly or indirectly;

   d. Telephone toll records, pen register and trap and trace information, and subscriber information;

   e. Washington State Department of Licensing records;

   f. Commercial Databases;

   g. Public records;

   h. Publicly viewable information on social media websites (*i.e.*, Facebook); and

   i. Confidential sources/informants.

7. In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

COMPLAINT / United States v. Michael John Scott - 4
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8. On December 6, 2018, MICHAEL JOHN SCOTT was arrested and charged as one of dozens of members of a drug trafficking conspiracy as a result of a DEA Tacoma investigation into a drug trafficking organization (DTO) referred to as the CASTRO DTO. As part of the investigation into the CASTRO DTO, on December 3, 2018, United States Magistrate Judge Theresa L. Fricke authorized a federal search warrant for SCOTT's residence at 8024 150th Street Southeast, Snohomish, Washington. During the December 2018 search of SCOTT's residence, investigators found two gallon-sized, one quart-sized, and two sandwich-sized empty Ziploc bags in the master bathroom garbage can, and three fentanyl-laced imitation oxycodone pills on the bathroom floor. Investigators also found a clear plastic bag containing a few more fentanyl-laced imitation oxycodone pills in the master bedroom closet. The seized pills were consistent in appearance with the fentanyl-laced pills distributed by the CASTRO DTO, *i.e.*, small, blue, and imprinted with "M" and "30." Investigators found multiple tools of the trade used by drug traffickers in the residence, including a blue, Capsuline-brand pill counter (in a dresser drawer in the master bedroom) and two digital scales (in the master bedroom closet). Investigators also seized 100 gross grams of suspected cocaine, 40 gross grams of suspected MDMA, 9.35 net grams of 100% pure methamphetamine, 5,680 gross grams of processed marijuana, and a total of $44,362 in cash, some of which was hidden inside the walls of the residence.

9. After being advised of his *Miranda* rights, SCOTT admitted to agents that he obtained fentanyl-laced imitation oxycodone pills and cocaine from the CASTRO DTO for redistribution to others. On December 12, 2018, SCOTT was released to the supervision of Pretrial Services.

10. On June 18, 2019, SCOTT pleaded guilty to Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. In his plea agreement, SCOTT admitted, among other things, that he was a high-volume redistributor of cocaine and fentanyl-laced imitation oxycodone pills for the DTO; that the $44,362 in cash seized from his residence constituted cash drug proceeds; and that the

COMPLAINT / United States v. Michael John Scott - 5
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

loose pills and empty Ziploc bags found in the master bathroom on December 6, 2018, were there because he was flushing larger quantities of the pills down the toilet before law enforcement officers could seize them.

11. On January 24, 2020, SCOTT appeared before the Honorable Ronald B. Leighton, United States District Judge, for sentencing. The Court sentenced SCOTT to 78 months in custody, to be followed by four years of supervised release. SCOTT was permitted to remain out of custody, subject to the supervision of Pretrial Services.

12. Two days prior to SCOTT's sentencing (i.e., January 22, 2020), DEA Bellingham received a tip from someone (who would later become a Whatcom County CS) who told investigators s/he could obtain pills made with fentanyl. The CS then met with investigators at the DEA Bellingham office and said that s/he could purchase pills from an individual named Michael Scott, who lived in Snohomish County. The CS told investigators that s/he had active warrants and wanted to work for judicial consideration for those warrants. An NCIC check showed the CS has an active felony warrant for retail theft and an active warrant for false reporting to law enforcement, both in Skagit County, Washington. NCIC also showed that s/he has two felony theft charges, multiple gross misdemeanor convictions for theft and criminal trespass, and multiple misdemeanor convictions for driving while license suspended and bail jumping.

13. The CS told investigators that s/he knew Michael Scott through Scott's family. The CS identified MICHAEL JOHN SCOTT from a Washington DOL photo of him. The CS said that SCOTT called him/her earlier in January 2020 to see if the CS wanted any counterfeit M30's or could sell counterfeit M30's.[1] The CS stated SCOTT told him/her that SCOTT was looking to get rid of 100, 200, or up to 1,000 pills; the CS stated s/he was told the pills were made with fentanyl. The CS told investigators that s/he told SCOTT that s/he did not want any pills nor did s/he know anybody that wanted the

---

[1] The CS admitted to investigators that s/he previously purchased a single Vicodin from SCOTT.

COMPLAINT / United States v. Michael John Scott - 6
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

pills at that time. The CS stated that a few days after the phone conversation, s/he ran into SCOTT at a retail store in Bellingham, Washington. The CS stated that at the retail store SCOTT showed him/her a backpack that SCOTT had in his car and that backpack contained multiple baggies of pills; the CS said the pills were both light and darker blue. The CS stated s/he thought each baggie had 100 pills and that s/he thought there were more than 1,000 pills in the backpack. The CS said that SCOTT relayed that he heard the M30's in Bellingham were being sold for $40 a pill and that SCOTT wanted to sell his M30's for $20 a pill.

14. Investigators asked the CS if s/he knew where SCOTT lived. The CS said yes, and that s/he had been to SCOTT's residence as recently as December of 2019. Investigators asked the CS if s/he could identify SCOTT's residence using Google Maps. Using Google Maps, the CS identified SCOTT's residence as 8024 150th Street Southeast, Snohomish, Washington. The CS provided SCOTT's phone number as 425-308-8815. The CS had SCOTT's phone number stored in his/her phone under the contact name "mickey." Investigators discussed with the CS the possibility of having the CS reach out to SCOTT to arrange for a controlled purchase of pills that would occur later that same day (January 22, 2020). The CS stated that s/he had a prior immediate obligation, but that s/he could return later that evening to be signed up as a CS with Whatcom County and arrange for the controlled purchase.

15. After leaving the initial meeting with investigators, as described above, investigators contacted the CS to see when s/he would return. The CS informed investigators that s/he would return shortly. The CS also told investigators that s/he had a text message conversation with SCOTT to arrange for the purchase of pills. Investigators then told the CS that since s/he had not been signed up as a CS yet, s/he needed to stop trying to make arrangements to purchase pills until investigators were present. Shortly thereafter, the CS returned to meet with investigators. During the second meeting, which also occurred on January 22, 2020, the CS was signed up as a CS with Whatcom County.

COMPLAINT / United States v. Michael John Scott - 7
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16. During this second meeting on January 22, 2020, the CS showed investigators a text message conversation[2] between the CS and the phone contact listed as "mickey," whom, as previously noted, the CS identified as SCOTT. In those messages, when the CS asked SCOTT if they could meet up, SCOTT replied affirmatively and asked "how many" the CS needed. The CS responded, "500."

17. At approximately 8:07 p.m., after Whatcom County investigators signed up the CS, investigators directed the CS to send another message to SCOTT requesting the pills. The CS sent a text message and asked, "hey someone wants me to grab $500 worth of those can i grab that." Investigators had directed the CS to change the request from 500 pills to make it seem as if the CS had $500 to purchase pills. This was done to ensure investigators could cover the cost of the pills in the event the CS had to conduct a controlled purchase that evening. At approximately 8:16 p.m., after having not received a response from SCOTT, investigators directed the CS to call SCOTT to arrange for the controlled purchase of the fentanyl-laced imitation oxycodone pills (the M30's).

18. The CS called SCOTT, and investigators listened to the conversation between a male, whom the CS later identified as SCOTT, and the CS. This call was not recorded. Upon answering the phone, SCOTT told the CS that s/he was "all over the place," and indicated that it was too late for SCOTT to meet the CS that evening. The CS asked if SCOTT was available to meet tomorrow and SCOTT said that he could meet up; no times were discussed. The CS also asked if s/he could drive to SCOTT to pick up the pills. In reply, SCOTT said that his wife was on her way to SCOTT's house and that he would have to call his wife to see where she was. SCOTT then hung up the phone. After waiting for SCOTT to call back, investigators then directed the CS to send a text message to SCOTT. The CS asked SCOTT, "hey whass up can I come through" and "?????? Can

---

[2] Investigators have reviewed the CS's text messages discussed herein.

COMPLAINT / United States v. Michael John Scott - 8
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

you let me know its getting late." At approximately 8:30 p.m., SCOTT replied and said, "No", "Tomorrow", "I'm sorry", and "Intold you at 430 when we were talking its 830."

19. Later that evening, at the direction of investigators, the CS sent text messages back to SCOTT and said, "k what time ru thinking so I can make sure I have someone to watch my daughter", and "???? And he wants some dark [a coded reference to heroin] did you have or just those blues if not its fine just let me know so I can let him know whass up." SCOTT did not respond that evening.

20. On January 23, 2020, the CS received a phone call from phone number 425-535-0965. After verifying with investigators that 425-535-0965 did not belong to one of them, the CS told investigators that s/he thought it was SCOTT's new phone number. The CS also told investigators that s/he received a text message from the number that said, "new line." In reply, the CS said, "italion stallion," and received a response back that said, "yup." The CS told investigators that SCOTT refers to himself as the "Italian stallion."

21. The CS later sent investigators a screen shot picture of two text messages s/he received from SCOTT (425-535-0965) that said, "Hello" and "What's up." The CS and SCOTT went on to exchange a series of text messages in which SCOTT discussed the fact he just had received a 78-month sentence. SCOTT indicated that he would be in the Bellingham, Washington, area the following day (January 25, 2020), and could meet up with the CS then.

22. On January 25, 2020, the CS and SCOTT exchanged a series of text messages. After speaking with the CS, investigators decided to again attempt to set up the purchase of the M30 pills from SCOTT, this time on January 29, 2020. In the interim (i.e., between January 25, and January 29, 2020), the CS and SCOTT continued to engage in text messages. Notably, investigators had directed the CS to not discuss purchasing pills with SCOTT except at their direction. From review of the text messages, the CS appears to have followed investigators' direction. There were several text messages

COMPLAINT / United States v. Michael John Scott - 9
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

received from SCOTT that seemed to indicate that SCOTT could not get in touch with the CS during this time.

23. On January 29, 2020, investigators met with the CS to set up the controlled purchase with SCOTT. After reviewing the text message conversations described above, investigators directed the CS to send SCOTT a message to see if SCOTT was available to meet. The CS then had the following text message conversation with SCOTT (425-535-0965):

| | |
|---|---|
| CS: | hey so i dont have a car can we meet up |
| SCOTT: | What the fuck is up with you. |
| SCOTT: | When |
| SCOTT: | You drop off |
| SCOTT: | You reaper are you smoked out or what |
| SCOTT: | This is fucking cluck behavior |

24. After the CS received the messages from SCOTT, SCOTT attempted to call the CS. Investigators directed the CS to not answer the call at that time. A few minutes later, at approximately 4:24 p.m., investigators directed the CS to call SCOTT to attempt to set up a meeting to purchase the fentanyl-laced imitation M30's. In this call, which was recorded, SCOTT expressed his frustration with the CS ("This is like fucking cluck behavior. I don't understand. You say you are on your way down, you don't show up. … You know what I'm saying? Like what the fuck you want me…you know? Then you been sitting on my motherfucking money for a couple…for quite some time you know? I don't deal business this way."). At the end of the call, SCOTT and the CS agreed that perhaps they could meet up later that day (January 29, 2020) for the transaction.

25. On January 29, 2020, at approximately 5:52 p.m., the CS called SCOTT and arranged to purchase the pills on Thursday, January 30, 2020. This phone call also was recorded. In that call, SCOTT agreed he could meet the CS on January 30, 2020, "mid-morning, early afternoon." The CS told SCOTT s/he no longer had the money for

COMPLAINT / United States v. Michael John Scott - 10
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

500 pills, but had the money for 300 pills. SCOTT offered the CS a price of $15/pill, which the CS agreed "would work."

26. On January 30, 2020, the CS confirmed with SCOTT that they would be meeting that day. Investigators established surveillance at SCOTT's residence (8024 150th Street Southeast, Snohomish, Washington) and saw him leave at approximately 11:30 a.m. in his black BMW sedan (bearing Washington plate BMV0641). Investigators followed SCOTT from his residence to a restaurant in Everett, Washington, where he appeared to eat lunch, and then northbound on Interstate 5. At approximately 1:10 p.m., SCOTT called the CS and said he was on his way. They agreed SCOTT would call again when he had passed Burlington, Washington, and he and the CS would figure out where to meet.

27. At approximately 2:00 p.m., when SCOTT got into the Bellingham, Washington area, a Whatcom County Sherriff's office deputy conducted a traffic stop on the black BMW sedan. SCOTT was the driver and sole occupant. During the traffic stop, the deputy had SCOTT get out of the vehicle. A Whatcom County Sheriff's Office narcotics canine was then deployed on the BMW and alerted to the presence of the odor of narcotics emanating around the trunk of the vehicle. The Whatcom County deputy then asked SCOTT if he could search the car. SCOTT declined to give consent to search.

28. Investigators directed the deputy to search SCOTT's black BMW sedan. During the search, investigators found approximately 9 baggies containing small, light blue pills that investigators believe to be, based on training, experience, and the nature of the investigation, imitation M30 pills laced with fentanyl. Investigators estimated each baggie to contain approximately 100 pills and noted that they were packaged in a manner consistent with redistribution. Investigators also found approximately a fist-size of a dark-colored hard substance that they believe to be, based on training and experience, heroin. The heroin weighs approximately 134 gross grams and later field-tested positive for the presence of heroin. After the discovery of the drugs, SCOTT was placed under

COMPLAINT / United States v. Michael John Scott - 11
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

arrest. Investigators also found three bundles of cash, with each bundle appearing to contain $100 bills, in the vehicle.

29. I then obtained federal search warrants for SCOTT's residence (8024 150th Street Southeast, Snohomish, Washington) and the black BMW (to conduct a more thorough search), from the Honorable Brian A. Tsuchida, United States Magistrate Judge.

30. During the search of SCOTT's residence (8024 150th Street Southeast, Snohomish, Washington), investigators found 54 gross grams of methamphetamine (field-tested with positive results), six blue "M30" pills, consistent in appearance with what investigators believe to be fentanyl-laced imitation oxycodone pills, and multiple bundles of cash consisting of $20 bills.

31. In SCOTT's nightstand drawer, investigators found a Colt Delta Elite 10mm semi-automatic pistol, bearing serial number DS42017. The magazine appeared to be fully loaded with eight rounds, and was seated in the pistol; no round was chambered. A search through law enforcement databases showed the Colt Delta Elite 10mm semi-automatic pistol, bearing serial number DS42017 had been reported to law enforcement as stolen (in Seattle/King County) on or about November 6, 2019.

32. I have determined that Colt firearms are not manufactured in the State of Washington, and that therefore the Colt Delta Elite 10mm semi-automatic pistol, bearing serial number DS42017, found in SCOTT's nightstand had to have travelled in interstate or foreign commerce prior to his possession of it on January 30, 2020.

//
//
//
//

COMPLAINT / United States v. Michael John Scott - 12
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based on the above facts, I respectfully submit that there is probable cause to believe that MICHAEL JOHN SCOTT did knowingly and intentionally commit the crimes of *Possession of Controlled Substances With Intent to Distribute*, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, and *Felon in Possession of a Firearm*, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

RYAN C. SMITH, Complainant
Special Agent, Drug Enforcement Administration

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this ___31___ day of January, 2020.

BRIAN A. TSUCHIDA
United States Magistrate Judge

COMPLAINT / United States v. Michael John Scott - 13
Case No. MJ20-041 / USAO #2020R00106

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970